|  |  |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO | |
| REINALDO JOSÉ CABELLO-ACUÑO,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No. 09-1118 (JAF)<br><br>(Crim. No. 05-309) |

**OPINION AND ORDER**

Petitioner, Reinaldo José Cabello-Acuño, brings this pro-se petition under 28 U.S.C. § 2255 for relief from sentencing by a federal court, alleging that the sentence was imposed in violation of his rights under federal law.  (Docket No. 1.)  The Government opposes.  (Docket No. 5.)

**I.**

**Factual and Procedural Summary**

On October 28, 2005, Petitioner was found guilty of possession with intent to distribute five kilograms or more of cocaine aboard a vessel under U.S. jurisdiction, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. app. §§ 1902–1904 (recodified at 46 U.S.C. §§ 70501–70507), and of aiding and abetting, 18 U.S.C. § 2.  Petitioner was the first officer of the <u>Sea Atlantic</u>, a Bolivian-flagged commercial vessel intercepted on the high seas by the U.S. Coast Guard while smuggling over 1,800 kilograms of cocaine.  The U.S. State Department obtained a certification from Bolivia allowing the U.S. Coast Guard to search the

Sea Atlantic. When this search produced contraband, the crew was detained as the U.S. Coast Guard sailed the Sea Atlantic to Puerto Rico.

At trial, Petitioner relied on a duress defense, in which the Sea Atlantic's captain, Alcides Rodríguez-Durán, took the stand to testify that the crew was initially unaware they would be carrying contraband and went along with the scheme only under threat of violence by a Colombian drug cartel. The jury also heard testimony from Immigration and Customs Enforcement Agent José Rosado-Santiago, who testified that crew member Ronald José Morelis-Escalona had confessed to him after the Sea Atlantic arrived in San Juan. According to Agent Rosado-Santiago, Morelis-Escalona confessed that he knew, at the time he was hired, that the Sea Atlantic would be carrying contraband and, furthermore, that he would be paid $40,000 for his role in the smuggling operation. Petitioner was convicted and sentenced to 235 months' imprisonment.

All nine crew members appealed their sentences; these appeals were consolidated by the First Circuit and decided in United States v. Rodríguez-Durán, 507 F.3d 749 (1st Cir. 2007). Petitioner now seeks relief under § 2255, alleging six instances in which the representation provided by his trial counsel, Luis Cháves-Ghigliotty, fell below the standard of representation guaranteed by the Sixth Amendment. (Docket No. 1.) The Government opposed the motion. (Docket No. 5.) A hearing was held on July 16, 2010, during which attorney Luis Cháves-Ghigliotty denied Petitioner's claim that Cháves-Ghigliotty had not informed him of the maximum sentence exposure he could face by going to trial. (Docket No. 15.)

## II.

## **Standard for Relief Under 28 U.S.C. § 2255**

A federal district court has jurisdiction to entertain a § 2255 petition when the petitioner is in custody under the sentence of a federal court. See 28 U.S.C. § 2255. A federal prisoner may challenge his or her sentence on the ground that, inter alia, it "was imposed in violation of the Constitution or laws of the United States." Id.

The petitioner is entitled to an evidentiary hearing unless the "allegations, even if true, do not entitle him to relief, or . . . the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting United States v. McGill, 11 F.3d 223, 225–26 (1st Cir. 1993); see § 2255(b).

## III.

## Analysis

Because Petitioner appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, Petitioner's pro se status does not excuse him from complying with procedural and substantive law. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Petitioner argues that Cháves-Ghigliotty's representation at trial fell below the minimum standards guaranteed by the Sixth Amendment right to counsel. The success of such ineffective-assistance-of-counsel claims under § 2255 depends on a petitioner's showing not only a deficient performance by his trial counsel, but also a resulting prejudice. Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010). Deficient performance is present where the trial

counsel's representation "fell below an objective standard of reasonableness," a standard that is informed by "prevailing professional norms." Id. (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). Choices made by counsel that could be considered part of trial strategy will almost never amount to deficient performance. See Strickland, 466 U.S. at 690. Counsel's decision not to pursue "futile tactics" will not be considered deficient performance. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999); see also Acha v. United States, 910 F.2d 28, 32 (1st Cir. 1990) (stating that failure to raise meritless claims is not ineffective assistance of counsel). Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," but "sufficient," in this context, is less onerous than a "more likely than not" standard. Id.

Petitioner alleges that Cháves-Ghigliotty's representation was ineffective because he failed to: (1) move to dismiss the "defective and misleading" indictment; (2) explain the U.S. Sentencing Guidelines ("Guidelines") and the maximum sentence Petitioner could face; (3) object to the lack of an authenticated copy of Bolivia's written authorization for the U.S. Coast Guard to board the Sea Atlantic; (4) object to the court's jurisdiction; (5) move for change of venue; and (6) object to inclusion of statements made by a codefendant. We address each of these claims in turn.

**A.    Defective Indictment**

Petitioner first argues that Cháves-Ghigliotty's failure to move the court to dismiss the indictment as "defective and misleading" was a violation of his Sixth Amendment right to counsel. (Docket No.1 at 2–3.) Both counts of the indictment allege that the crimes were

committed "in the District of Puerto Rico, on the high seas, elsewhere, and within the jurisdiction of this court." (Crim. No. 05-309, Docket No. 23.) Petitioner argues that, where the crime was committed on the high seas and not in Puerto Rico, the indictment was deceptive and misleading because it led Petitioner to believe he was being charged with a crime committed in Puerto Rico. (Docket No. 1 at 2–3.) He contends that Cháves-Ghigliotty should therefore have moved under Federal Rule of Criminal Procedure 12 to dismiss the indictment. (Id.)

"An indictment is sufficient 'if the offense is described with sufficient clarity to show a violation of law, and enables the accused to know the nature and cause of the accusation against him and to plead an acquittal or conviction in bar of future prosecution for the same offense.'" United States v. Stein, 233 F.3d 6, 23 (1st Cir. 2000) (quoting United States v. Fusaro, 708 F.2d 17, 23 (1st Cir. 1983)). Thus when an indictment sets forth all elements of the offense in the words of the statute, it is generally sufficient. Id. Here, the counts of the indictment reproduced the statutory elements in language tracking that of the original statute, 46 U.S.C. app. § 1903(a) (recodified at 46 U.S.C. § 70503(a)). Petitioner was made aware that he was accused of possessing a controlled substance aboard a vessel subject to U.S. jurisdiction and, because of the jurisdictional grant of the MDLEA, this was within the jurisdiction of the District of Puerto Rico. The indictment was not defective, and therefore Cháves-Ghigliotty's decision not to challenge its sufficiency was not deficient performance.

Civil No. 09-1118 (JAF)                                                                                                              -6-

**B.     Maximum Exposure Under the Guidelines**

Petitioner alleges that, prior to trial, Cháves-Ghigliotty did not explain the Guidelines to him or inform him of the maximum sentence he would face if sentenced within the Guidelines. (Docket No. 1 at 3–4.)

While the First Circuit has not ruled squarely on this issue, other circuits have held that counsel is ineffective where a defendant was not informed, prior to trial, of his maximum sentence exposure under the Guidelines. See, e.g., United States v. Gordon, 156 F.3d 376 (2d Cir. 1998) (upholding district court's grant of habeas relief where counsel claim was based on counsel's failed to advise petitioner of maximum exposure under Guidelines). We need not decide whether such a failure to inform a defendant of his maximum exposure is ineffective assistance of counsel. Cháves-Ghigliotty appeared before this court on July 16, 2010, and affirmed that, prior to trial, he explained the Guidelines system to Petitioner, informed him of the ten-year mandatory minimum under 21 U.S.C. § 960, and also informed him of the applicable Guidelines range. (Docket No. 15.) Having judged Cháves-Ghigliotty's credibility through his testimony before us in the case at bar, we reject Petitioner's contention that he was not informed of the Guidelines range in his case. Thus, Petitioner's claim fails.

**C.     Authentication**

Petitioner also argues that Cháves-Ghigliotty should have objected to the Government's failure to enter into evidence a "certified copy" of Bolivia's consent to boarding of the Sea Atlantic by the U.S. Coast Guard. (Docket No.1 at 4–5.) Under the MDLEA, foreign vessels are subject to U.S. jurisdiction if "the flag nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. app. § 1903(c)(1)(C)

(recodified at 46 U.S.C. § 70502(c)(1)(C)).  At trial, U.S. Coast Guard Lieutenant Scott Cieblik identified the certification he received from the U.S. State Department, relaying Bolivia's consent to the boarding and search of the Sea Atlantic, and testified to its contents. (Crim. No. 05-309, Docket No. 269 at 95–96 ).  The transcript does not demonstrate that the Government ever moved this certification into evidence, although it was retained in the record and listed as an admitted exhibit. (See Crim. No. 05-309, Docket No. 134.) Petitioner believes that the U.S. Coast Guard did not obtain this certification from Bolivia prior to searching the Sea Atlantic. (Docket No. 1 at 5.) He previously advanced this theory on direct appeal, arguing that the certification had not been properly admitted and thus the evidence at trial was insufficient to support his conviction. See Rodríguez-Durán, 507 F.3d at 774–75. The First Circuit found that, even if it had not been properly admitted, there was no doubt as to the certification's authenticity and thus no plain error. Id. (noting the introduction of the certification's content by Lt. Cieblik's unchallenged testimony).

      Even if we were to assume that Cháves-Ghigliotty's failure to object was deficient performance, Petitioner fails to identify any prejudice arising from this act.  Had Cháves-Ghigliotty objected, the certification, bearing the seal of the United States, would have been moved into evidence and considered a self-authenticating document under Federal Rule of Evidence 902(1). Petitioner points to no evidence that the U.S. State Department did not receive authorization from Bolivia or that the authorization received was somehow fraudulent. Having demonstrated no prejudice to his defense arising from Cháves-Ghigliotty's failure to  object, Petitioner cannot succeed in this claim.

Civil No. 09-1118 (JAF) -8-

### D. Lack of Jurisdiction

Petitioner next alleges that Cháves-Ghigliotty was ineffective in not objecting to the court's jurisdiction. (Docket No. 1 at 6–7.) Petitioner argues that the Government failed to establish a nexus between his criminal conduct and the United States. (Id.) The First Circuit has previously ruled on this jurisdictional question. See Rodríguez-Durán, 507 F.3d at 761–62.

The decision of legal issues by an appellate court establishes the "law of the case" in a subsequent appeal by a codefendant. United States v. Paquette, 201 F.3d 40, 42–43 (1st Cir. 2000) (citing United States v. Rosen, 929 F.2d 839, 842 n.5 (1st Cir. 1991); United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999)). This is true "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." Rosen, 929 F.2d at 842 n.5 (citing White v. Murtha, 377 F.2d 428, 431–32 (5th Cir. 1967)).

Codefendant Morelis-Esaclona raised the issue of the court's jurisdiction on his direct appeal. 507 F.3d at 761–62. The First Circuit unequivocally affirmed the jurisdiction granted to the court by the MDLEA, noting that due process does not require the demonstration of a nexus between a defendant's criminal act and the United States. Id. (citing United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999)). Because at the date of trial we clearly had jurisdiction under First Circuit case law, Cháves-Ghigliotty's failure to challenge our jurisdiction was not ineffective assistance of counsel.

### E. Change of Venue

Petitioner claims that Cháves-Ghigliotty's performance was deficient because he did not request a change of venue to the District Court of the District of Columbia. (Docket No. 1 at 7.) The MDLEA states that venue is proper in either the district court where defendants entered the United States, or in the District Court for the District of Columbia. 46 U.S.C. app. § 1903(f) (recodified at 46 U.S.C. § 70504(b)). The only argument Petitioner provides as to why the District of Puerto Rico was an improper venue is that "subject matter jurisdiction might have been successfully challenged" in the District of Columbia. (Docket No. 1 at 7.) The Petitioner's point of entry into the United States was San Juan, Puerto Rico. Petitioner points to no factors that would have justified a transfer of venue under Federal Rule of Criminal Procedure 21. There is no indication that the District of Puerto Rico was either prejudiced against defendant or a less convenient venue than the District of Columbia. See Fed. R. Crim. P. 21. Cháves-Ghigliotty's choice not to move for a change of venue, therefore, was not deficient performance.

### F. Confrontation Clause Objection

Finally, Petitioner argues that the admission, without a limiting instruction, of Agent Rosado-Santiago's hearsay testimony detailing Morelis-Escalona's confession was a violation of the Confrontation Clause. (Docket No. 1 at 7–8.) Cháves-Ghigliotty's failure to object to this evidence, Petitioner claims, was deficient performance that prejudiced his defense.

On appeal, Petitioner argued that the admission of this testimony prejudiced his duress defense and undercut Captain Rodríguez-Durán's testimony that the crew was unaware that drugs would be onboard. The First Circuit addressed the admission of Morelis-Escalona's

statement under the plain error standard, finding that although it was error, it had neither affected Petitioner's "substantial rights" nor caused a miscarriage of justice. Rodríguez-Durán, 507 F.3d at 768–72. The analysis of whether an error affected a defendant's substantial rights is usually an inquiry into whether his defense was prejudiced. See United States v. Olano, 507 U.S. 725, 734 (1993) (holding that in most cases, "affecting substantial rights" is synonymous with "prejudicial," in that the error "must have affected the outcome of the district court proceedings"); accord United States v. Andujar-Basco, 488 F.3d 549, 558 (1st Cir. 2007) ("Put another way, [defendant] must establish that the error prejudiced him.").

We adopt the First Circuit's reasoning in holding that, while Cháves-Ghigliotty erred in not objecting to the admission of Morelis-Escalona's testimony, Petitioner's defense was not prejudiced. See 507 F.3d at 771–72. Morelis-Escalona's confession did not directly incriminate Petitioner, and there was ample evidence before the jury that Petitioner was a willing participant in the crime. Id. at 772.

> Incriminating papers were found in each of their berths, and the list of code words found in Cabello's room contained code names for both him and Rodríguez-Durán. Their positions as captain and first officer reinforced the documentary evidence suggesting that they were willing participants, and the paper found in Cabello's berth with Tejeiro's first names and phone numbers was particularly significant in linking him—as well as Rodríguez-Durán—to the crime's mastermind. Rodríguez-Durán testified, and the jury was thus able to appraise his credibility directly. This evidence was more than sufficient for us to conclude that there was no impact on these defendants' substantial rights.

Id.

Because Petitioner's defense was not prejudiced by Cháves-Ghigliotty's error, we cannot grant relief under § 2255.

Civil No. 09-1118 (JAF) -11-

## IV.

## **Certificate of Appealability**

In accordance with Rule 11 of the Rules Governing § 2255 Proceedings, whenever we deny § 2255 relief we must concurrently determine whether to issue a certificate of appealability ("COA"). We grant a COA only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). We see no way in which a reasonable jurist could find our assessment of Petitioner's constitutional claims debatable or wrong. Petitioner may request a COA directly from the First Circuit, pursuant to Rule of Appellate Procedure 22.

## V.

## **Conclusion**

For the foregoing reasons, we hereby **DENY** Petitioner's § 2255 motion (Docket No. 1). Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, summary dismissal is in order because it plainly appears from the record that Petitioner is not entitled to § 2255 relief in this court.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, this 23rd day of July, 2010.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
Chief U.S. District Judge